**Bonny ROGAN, Plaintiff,**

v.

**Mable LEWIS, Tom Tasma, and Royal Independent School District, Defendants.**

**Civil Action No. H–95–5194.**

United States District Court,
S.D. Texas,
Houston Division.

May 15, 1997.

Mark W. Robinett, Austin, TX, for Plaintiff.

David M. Feldman, Feldman & Associates, Houston, TX, for Defendants.

### MEMORANDUM OPINION AND ORDER

ATLAS, District Judge.

Plaintiff Bonny Rogan ("Plaintiff") has brought this action against Defendants Mable Lewis, Tom Tasma, and Royal Independent School District ("RISD") in connection with Plaintiff's termination as a teacher for RISD. Currently pending before the Court are Defendants' Motion to Dismiss and/or for Summary Judgment [Doc. # 20] and Plaintiff's Motion for Partial Summary Judgment [Doc. # 17]. The Court has considered the motions, the responses and replies, all other matters of record in the case, and the relevant authorities. For the reasons stated below, Defendants' Motion to Dismiss and/or for Summary Judgment is now **GRANTED IN PART** and Plaintiff's Motion for Partial Summary Judgment is **GRANTED**.

## I. *FACTUAL BACKGROUND*

In the fall of 1994, Plaintiff Bonny Rogan was employed as a fourth grade teacher for Defendant RISD with a one year probationary contract. *See* RISD Teacher Contract, Exhibit 11 to Affidavit of Bonny Rogan [Doc. # 23]. According to Defendants, soon after the school year began, Plaintiff's principal, Defendant Mable Lewis, became concerned with Plaintiff's teaching performance. Lewis believed that Plaintiff lacked classroom management and discipline skills and used inappropriate lesson plans, materials, and procedures. Lewis based her belief on letters of complaint she received from parents of Plaintiff's students, complaints from other teachers, and her own personal observation of Plaintiff's classroom. *See* Defendant's Motion, at 3–4; Exhibit A–4 to Defendant's Motion. Hoping to rectify the situation, Lewis sent Plaintiff a number of memos explaining her concerns and met with Plaintiff in several conferences to discuss her teaching performance. *See id.*

Despite these efforts, Lewis continued to find Plaintiff's performance unsatisfactory. She expressed her concern to Defendant Tom Tasma, RISD Superintendent. After investigating the complaints against Plaintiff, Tasma decided to recommend to the RISD Board of Trustees that Plaintiff be terminated. On October 19, 1994, Tasma wrote a letter to Plaintiff informing her that he would make this recommendation at the Board's meeting on November 13, 1994. *See* Exhibit A–5 to Defendant's Motion. In addition, Tasma claims that he explained to Plaintiff the reasons for his decision and that he informed her that she had the right to defend herself in front of the Board. *See* Affidavit of Tom Tasma ("Tasma Affidavit"), Exhibit A to Defendant's Motion, at 4. Plaintiff did not request a hearing before the Board and did not appear at the meeting to defend herself

against Tasma's recommendation of termination. On November 17, 1994, Tasma wrote to Plaintiff to inform her that the Board had adopted his recommendation, that she had been terminated for cause as of November 14, 1994, and that she could appeal this decision to the Texas Education Agency. *See* Exhibit A–8 to Defendant's Motion.

Plaintiff contends that Lewis' complaints regarding her performance were fabricated and served to retaliate against Plaintiff for filing grievances against Lewis. Plaintiff also claims that Lewis did not adequately respond to her grievances. Plaintiff does not deny that Lewis held conferences with her to discuss her performance and sent her memos regarding her concerns with Plaintiff's work. However, Plaintiff claims that because her work had been improving for a period before she received Tasma's letter, she was surprised to learn that Tasma would be recommending her termination to the Board and did not know what the grounds were for his recommendation. She contends that Tasma did not inform her that she could defend herself at the Board's meeting of November 13, 1994, and that she believed, based on RISD's policy, which was attached to Tasma's letter, and consultation with her attorney, that she would have an opportunity to defend herself *if* the Board accepted his recommendation but before her termination became effective.[1]

After Tasma informed Plaintiff that the Board had terminated her, Plaintiff did not pursue an appeal to the Texas Education Agency but instead filed this action in state court. Plaintiff alleges that Defendants Lewis and Tasma caused her to be terminated in retaliation for bringing grievance complaints against Lewis; that, in connection with her alleged retaliatory termination, Defendants violated Article I, Section 27 of the

---

1. RISD's policy provides that:

 Before any term contract employee is dismissed for good cause, the employee shall be given reasonable notice in writing of the charges against him or her and an explanation of the District's evidence, set out in sufficient detail to fairly enable the employee to show any error that may exist.

 If, *upon written notification,* the employee desires to be heard and to contest the proposed

 action of the *Board,* the employee shall give the Board written notice within 15 days of receiving the written notification. The hearing shall be set on a date that affords the employee reasonable time to prepare an adequate defense.

 Exhibit 4 to Plaintiff's Motion, at 2 (emphasis added).

Texas Constitution, Texas Gov.Code § 617.005, RISD policy, and the Code of Ethics and Standard Practices for Texas Educators; that she was terminated without notice and opportunity to be heard in violation of the due process guarantees of the United States and Texas Constitutions; and that Lewis and Tasma tortiously interfered with her employment relationship with RISD. *See* Plaintiff's Second Amended Petition ("Petition"), Exhibit 3 to Notice of Removal [Doc. # 1], at 7–9. Plaintiff seeks reinstatement, back pay, compensatory damages for her emotional distress, punitive damages, attorneys' fees, and costs. Defendants removed this action to federal court, pursuant to 28 U.S.C. § 1441(b), on the basis of federal question jurisdiction created by Plaintiff's 42 U.S.C. § 1983 claim that Defendants violated her federal constitutional right to due process. *See* Notice of Removal.

In their Motion to Dismiss and/or for Summary Judgment, Defendants assert a number of legal theories to defeat Plaintiff's various state law and federal constitutional claims. In her Motion for Partial Summary Judgment, Plaintiff contends that she is entitled to a judgment as a matter of law on her due process claim and that the only genuine issue of material fact that a jury must decide on that claim is the appropriate measure of damages.

## II. *SUMMARY JUDGMENT STANDARD*

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Bozè v. Branstetter*, 912 F.2d 801, 804 (5th Cir.1990). The facts are to be reviewed with all inferences drawn in favor of the party opposing the motion. *Bozè*, 912 F.2d at 804 (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986)). However, factual controver-

sies are resolved in favor of the nonmovant "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir.1995).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. If the movant meets this initial burden, the burden shifts to the nonmovant to demonstrate with "significant probative evidence" that there is an issue of material fact so as to warrant a trial. *Texas Manufactured Hous. Ass'n v. Nederland*, 101 F.3d 1095, 1099 (5th Cir.1996); *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 161 (5th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996)); *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir.1995); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Douglass v. United Servs. Auto. Ass'n*, 65 F.3d 452, 459 (5th Cir.1995), *revised on other grounds*, 79 F.3d 1415 (5th Cir.1996) (en banc); *Little*, 37 F.3d at 1075. In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *McCallum Highlands*, 66 F.3d at 92; *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990)). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552).

## III. *DISCUSSION*

### A. *Claims Against Individual Defen-*

_dants_ [2]

### 1. *Non-Constitutional Claims*

Under Tex. Educ.Code Ann. § 21.912(b), school employees are immune to non-constitutional tort claims brought against them in their personal capacities. This section provides that:

No professional employee of any school district within this state shall be personally liable for any act incident to or within the scope of the duties of his position of employment, and which act involves the exercise of judgment or discretion on the part of the employee, except in circumstances where professional employees use excessive force in the discipline of students or negligence resulting in bodily injury to students.

Tex. Educ.Code Ann. § 21.912(b). *See Barr v. Bernhard,* 562 S.W.2d 844, 848 (Tex.1978) (limiting tort liability of public school teachers in their individual capacities to motor vehicle accidents and excessive disciplinary force against their students); *Moore v. Port Arthur Indep. School Dist.,* 751 F.Supp. 671 (E.D.Tex.1990). Because the individual de-

fendants' conduct, which includes, for Lewis, reporting Plaintiff's allegedly poor work performance and, for Tasma, recommending Plaintiff's termination to the Board of Trustees, fell within the scope of their official duties [3] and because this conduct does not involve a motor vehicle accident or student injury, Lewis and Tasma are shielded by this statute from liability for Plaintiff's claims for tortious interference with Plaintiff's employment relationship with RISD [4] and violations of Texas Gov.Code § 617.005, RISD policy, and the Code of Ethics and Standard Practices for Texas Educators.[5]

### 2. *Constitutional Claims*

Although Plaintiff purports to direct all of her claims against all of the defendants, her due process claim is that the *Board* (representing RISD), not the individual defendants, unconstitutionally terminated her without providing her adequate notice and opportunity to be heard. Therefore, the only constitutional claim Plaintiff actually alleges against the individual defendants is her claim that they violated her rights under Article I,

---

2. Plaintiff has brought this action against Lewis and Tasma in both their individual and official capacities. Suing public officials in their official capacities for acts performed within the scope of their authority is equivalent to suing the governmental entity. *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) ("[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Alcorn v. Vaksman,* 877 S.W.2d 390, 403 (Tex.App.—Houston [1st Dist.] 1994, writ denied). Thus, Plaintiff's claims against the individual defendants in their official capacities will be addressed *infra* in Section III.B., and this section refers only to Lewis and Tasma's immunity in their individual capacities.

3. The former Texas Education Code, in effect at the time of Plaintiff's termination, provided that:
 (a) Public school principals ... shall be responsible for:
 ...
 (2) submitting recommendations to the superintendent concerning assignment, evaluation, promotion, and dismissal of all personnel assigned to the membership center.
 Texas Education Code § 21.913 (repealed and amended 1995).

4. In addition, even if this statutory immunity does not shield Lewis and Tasma from Plaintiff's

claim that they tortiously interfered with her employment relationship with RISD, Plaintiff still cannot succeed on this claim. Because Lewis and Tasma are representatives of RISD, in order for Plaintiff to succeed on her tortious interference claim, she would have to show that these defendants acted so contrary to RISD's interests that their behavior could only have been motivated by personal interest. *See Holloway v. Skinner,* 898 S.W.2d 793, 797 (Tex.1995). However, Plaintiff has not offered sufficient evidence to raise a genuine question of material fact regarding whether the individual defendants were so wrongly motivated. Defendants have offered evidence justifying Lewis' concerns about Plaintiff's work performance and Tasma's decision to recommend her termination. In response to Defendants' evidence, Plaintiff offers only her own speculations and conclusory allegations, based on her subjective belief, that Lewis had a "personal vendetta" against her and that Tasma sought to punish her for challenging his authority.

5. In addition, even if this statutory provision does not apply to these latter three claims, Plaintiff is also barred from asserting these claims in court because she failed to exhaust her administrative remedies. *See infra,* Section III.B. 1.

Section 27 of the Texas Constitution.[6] This claim is addressed *infra* at Section III.B.2.b.

### B. *Claims Against RISD*

#### 1. *Non-Constitutional Claims*

█ Defendants contend that, because Plaintiff failed to pursue an appeal to the Texas Education Agency, she may not bring a court action claiming that her termination violated Texas Gov.Code § 617.005, RISD policy, and the Code of Ethics and Standard Practices for Texas Educators. In *Barrientos v. Ysleta Indep. School Dist.*, 881 S.W.2d 159, 160 (Tex.App.—El Paso 1994, no writ) (citations omitted), the court explained:

> Section 11.13 of the Education Code and the Texas Administrative Code, Title 19, § 157.1041 *et seq.* (1994), provide a comprehensive administrative appeal process for "persons having any matter of dispute among them arising under the school laws of Texas." When a teacher is being terminated, questions of fact are involved and must be appealed to administrative authorities before the teacher resorts to the courts. In cases involving procedural complaints, an aggrieved party must exhaust all administrative remedies before resorting to the courts.[7]

The Court agrees that Plaintiff is legally barred from pursuing these non-constitutional claims in court after failing to exhaust her administrative remedy. *See Mission Indep. School Dist. v. Diserens*, 144 Tex. 107, 188

S.W.2d 568, 569 (1945); *Mitchison v. Houston Indep. School Dist.*, 803 S.W.2d 769, 773 (Tex.App.—Houston [14th Dist.] 1991, writ denied).[8]

### 2. *Constitutional Claims*

█ Because the exhaustion of administrative remedies requirement does not apply to constitutional claims, *see Texas Education Agency v. Cypress–Fairbanks Indep. School Dist.*, 830 S.W.2d 88, 91 n. 3 (Tex.1992), the Court must examine Defendants' other arguments with respect to Plaintiff's constitutional claims. However, before addressing the merits of these claims, the Court must consider, as a preliminary matter, whether Plaintiff may assert constitutional claims against a school district. The Court concludes that, under both state and federal constitutional law, Plaintiff may bring her constitutional claims against RISD.

█ First, with respect to her state constitutional claims, Plaintiff's suit is actionable. The Texas courts have ruled that fired teachers may sue school districts for alleged state constitutional violations when they seek injunctions and reinstatement. *See Alcorn*, 877 S.W.2d at 403–04. *See also Director of Dep't of Agriculture & Environment v. Printing Indus. Ass'n of Texas*, 600 S.W.2d 264, 265–66 (Tex.1980) (no state consent required to sue for injunction to prevent violations of state constitutional rights).

---

6. Even if Plaintiff stated a cause of action against Lewis and Tasma for violating her right to due process, these defendants would be shielded from Plaintiff's federal due process claim under the doctrine of qualified immunity. Under this doctrine, public officials acting within the scope of their official duties are shielded from civil liability as long as their conduct does not violate a plaintiff's clearly established constitutional right. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814–19, 102 S.Ct. 2727, 2736–39, 73 L.Ed.2d 396 (1982); *Hill v. Silsbee Indep. School Dist.*, 933 F.Supp. 616, 627 (E.D.Tex.1996).

7. At the time of Plaintiff's termination, Section 11.13(a) of the Texas Education Code provided that:

> Except in cases of student disciplinary actions ... persons having any matter of dispute among them arising under the school laws of Texas or any person aggrieved ... by actions or decisions of any board of trustees ... may

appeal to the commissioner of education, who, after due notice to the parties interested, shall hold a hearing and render a decision without cost to the parties involved, but nothing contained in this section shall deprive any party of any legal remedy.

Although this statute indicates that parties *may* pursue an administrative appeal, the court in *Barrientos* ruled that parties *must* pursue such an appeal before suing in court.

8. Plaintiff cannot argue that she did not know that this administrative appeal was available to her. In Tasma's letter to Plaintiff notifying her of her termination, he informed her of her right to appeal and even provided the address and phone number of the Texas Education Agency so that she could contact it for more information or to begin the appeal process. *See* Exhibit A–8 to Defendant's Motion.

■■ Second, with respect to Plaintiff's federal constitutional claim, under *Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a local governmental entity may be held liable under 42 U.S.C. § 1983 for violations of federal law committed pursuant to a governmental "policy or custom.". For purposes of § 1983, a school district is a local governmental entity. *See Kingsville Indep. School Dist. v. Cooper,* 611 F.2d 1109, 1112 (5th Cir.1980).

■■ Defendants argue that Plaintiff cannot succeed on her federal constitutional claim because Plaintiff has not pled or proven that RISD's alleged violations resulted from an official policy or custom. This argument is clearly without merit. An "official policy" includes a "decision that is officially adopted and promulgated by the [entity's] lawmaking officers." *Bennett v. City of Slidell,* 728 F.2d 762 (5th Cir.1984) (en banc), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985); *Johnson v. Moore,* 958 F.2d 92, 94 (5th Cir.1992). In this action, Plaintiff alleges that RISD's Board of Trustees violated her constitutional rights by deciding to terminate her without first providing her with notice and an opportunity to be heard. *See Kingsville,* 611 F.2d at 1112 ("[s]chool district personnel decisions by the body entrusted with such decisions are 'officially adopted and promulgated'" for purposes of § 1983 liability against a school district) (quoting *Moore v. Tangipahoa Parish School Board,* 594 F.2d 489, 493 (5th Cir. 1979)).

### a. *Due Process*

*Liability.*—Plaintiff devotes the majority of her arguments to her claim that she was terminated without notice or opportunity to

be heard in violation of her right to due process under the Fourteenth Amendment to the United States Constitution.[9] In fact, Plaintiff's own Motion for Partial Summary Judgment only addresses this claim. In brief, Plaintiff argues that she was not given sufficient notice of the reasons underlying Tasma's recommendation that she be terminated. Plaintiff also argues that, although she may have had an opportunity, prior to her termination, to defend herself in front of the Board at its meeting of November 13, 1994, she did not receive notice that her sole opportunity would be at *that* meeting. She admits that she was informed by Tasma's letter of October 19, 1994, that on November 13, 1994, Tasma would submit his recommendation to the Board. However, Plaintiff claims that the Board policy was that, if the *Board* decided to terminate her, she would have an opportunity to defend herself in front of the Board *after* receiving notice that the Board had decided to act on the recommendation. *See supra* note 1. In other words, Plaintiff believed that, pursuant to its policy, the Board would not take final action immediately upon accepting a recommendation of termination but instead that, if the Board agreed with the recommendation, it would then send Plaintiff written notice of its proposed action and a statement of reasons for the proposed action and allow her the opportunity to defend herself in front of the Board. Relying on this policy and after consultation with her attorney, Plaintiff claims that she intentionally waited to find out what action the Board would take on Tasma's recommendation and instructed her attorney to request a hearing *if* the Board notified her that it proposed to accept Tasma's recommendation.

---

**9.** Plaintiff also alleges that her termination violated the due process clause of the Texas Constitution, Article I, Section 19. Although the Texas Supreme Court has acknowledged that the Texas due process guarantee may provide broader protection than the federal due process clause, *see In the Interest of J.W.T.,* 872 S.W.2d 189, 197 n. 23 (Tex.1994) (quoting *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 293, 102 S.Ct. 1070, 1077, 71 L.Ed.2d 152 (1982)), Plaintiff has not cited, and the Court is not aware of, any authority that has interpreted the Texas due process

clause to provide greater protection to a public employee challenging her termination for lack of sufficient notice and opportunity to be heard. *See University of Texas Medical School at Houston v. Than,* 901 S.W.2d 926, 929 (Tex.1995) ("Although not bound by federal due process jurisprudence ... we consider federal interpretations of procedural due process to be persuasive authority in applying our due course of law guarantee"). Therefore, the Court's federal due process analysis applies to Plaintiff's state due process claim as well.

Defendants argue, in response, that Plaintiff was afforded due process because, prior to Tasma's notifying her that he would recommend that she be terminated, Plaintiff had ample written and oral notice of the reasons for Lewis' and Tasma's dissatisfaction with her performance and therefore of the reasons that Tasma planned to make his recommendation to the Board. In addition, Defendants argue that Plaintiff's rights were not violated since Plaintiff knew that Tasma intended to recommend her termination to the Board at its meeting of November 13, 1994, and since Plaintiff could have appeared at the meeting to defend herself had she chosen to do so.

 Plaintiff does not contend that the Board's alleged failure to follow its own policy violated her right to due process.[10] The crux of her argument is instead that the notice she received describing the RISD termination policy led her to believe that, if the Board adopted the recommendation to terminate her, *before* it took *final* action on this decision, she would have the opportunity to defend herself in front of the Board.

 The due process clause requires an employer to provide notice and opportunity to respond before discharging an employee who has a property interest in continued employment. *See Cleveland Board. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Soderstrum,* 925 F.2d at 138. In *Brown v. Texas A & M University,* 804 F.2d at 333, the Fifth Circuit stated the following requirements for alleging a due process violation:

> In order to make out a Procedural Due Process claim in the context of a wrongful

discharge complaint, a former public employee must allege with particularity: (i) the state or federal law or understanding giving rise to the property interest; (ii) the particular process that plaintiff was entitled to and failed to receive; and (iii) that the [defendant's] failure to provide these particular processes violated "clearly established constitutional law" at the time of the alleged infraction.

Under this standard, Plaintiff has adequately alleged a due process claim. Her allegations are: (i) that her employment contract created a property interest in her continued employment;[11] (ii) that she was entitled to receive detailed notice describing the reasons for the Board's decision to terminate her and proper notice regarding when she could defend herself in front of the Board; and (iii) that Defendants' failure to provide this notice violated her constitutional right to due process.

The Court concludes that Plaintiff has failed to raise a genuine fact question on the issue of whether she received adequate notice of the charges against her. However, Plaintiff has established as a matter of law that she was denied, in violation of her right to due process, her opportunity to defend herself in front of the Board *after* the Board notified her that it proposed to adopt Tasma's recommendation that she be terminated but before the Board made a final decision.

 With respect to Plaintiff's contention that she was not given sufficient notice of the reasons underlying the Board's decision to terminate her, she argues that the Board violated the RISD termination policy, which

---

**10.** This argument would not be successful even if Plaintiff had made it. As the Fifth Circuit has made clear:

> The failure of a state agency to comply with its internal regulations is insufficient as a matter of law to establish a violation of Due Process, because constitutional minima nevertheless may have been met. *Franceski v. Plaquemines Parish School Board,* 772 F.2d 197, 199, 200 (5th Cir.1985). "There is not a violation of due process every time a university ... violates its own rules. Such action may constitute a breach of contract or violation of state law, but unless the conduct trespasses on federal constitutional safeguards, there is no constitutional deprivation."

*Brown v. Texas A & M,* 804 F.2d 327, 335 (5th Cir.1986) (quoting *Levitt v. University of Texas at El Paso,* 759 F.2d 1224, 1230 (5th Cir.), cert. denied 474 U.S. 1034, 106 S.Ct. 599, 88 L.Ed.2d 578 (1985)). *See also Soderstrum v. Town of Grand Isle,* 925 F.2d 135, 138 n. 6 (5th Cir.1991) (employer's failure to follow its own termination procedures does not in itself necessarily constitute due process violation).

**11.** Defendants do not dispute the fact that Plaintiff had a property interest in her continued employment for the one year duration of her contract.

requires that the teacher be given "reasonable notice in writing of the charges against him or her and an explanation of the District's evidence, set out in sufficient detail to fairly enable the employee to show any error that may exist." Exhibit 4 to Plaintiff's Motion, at 2. However, as explained *supra note* 10, a school board's failure to follow its own teacher termination policy does not in itself necessarily constitute a violation of due process.[12] Instead the Court must consider whether the Board complied with the constitutional minimum requirements of due process.

In this case, Plaintiff does not deny that, prior to Tasma's informing her that he would recommend her termination, both Lewis and Tasma gave her extensive written and oral admonitions regarding her teaching performance. *See Brown*, 804 F.2d at 335 (supervisor's meeting with employee and detailed memorandum describing employee's alleged inadequacies constituted adequate notice). Instead, Plaintiff claims that because her work began to improve after she received these admonitions, she thought these problems had been resolved and therefore did not know why Tasma would recommend her termination. However, even if Plaintiff believed that her earlier problems, which had occurred primarily during the month of September, had been resolved by the time she received Tasma's letter in October, she was certainly still aware of these earlier complaints and thus should have realized that they were the basis for Tasma's intended recommendation. The fact that she believed that her alleged deficiencies underlying these earlier complaints had been corrected does not mean that she did not have adequate notice of the complaints. Thus, the Court concludes that Plaintiff has not raised a genuine question of material fact on the issue of whether she received adequate notice of the charges against her.

■ However, in response to Plaintiff's Motion for Partial Summary Judgment, Defendants have not raised a genuine question of material fact on the issue of whether Plaintiff was denied her right to defend herself in front of the Board. In their Supplement to Defendants' Motion to Dismiss and/or for Summary Judgment ("Supplement") [Doc. # 30], at 4, Defendants concede that "Plaintiff arguably has succeeded in demonstrating that RISD failed to follow its own internal procedures." The Court agrees that Plaintiff reasonably understood the Board's policy to mean that the Board would not take final action on a termination recommendation until the Board itself gave the employee notice of its proposed action.[13] Be-

---

12. Plaintiff's separate claim against the Board for allegedly failing to follow its own policy is barred here because of Plaintiff's failure to pursue her administrative remedy, as described *supra* in Section III.B.1.

13. Plaintiff argues that, even if the statement in the Board's policy that "[i]f, upon written notification, the employee desires to be heard and to contest the proposed action of the Board" does not make clear that the Board itself must provide the employee with "written notification" in order to trigger the employee's right to request a hearing, the state law description of the termination procedure makes clear that the notification must be from the Board itself. Former Section 21.204 of the Texas Education Code, which was in effect at the time of Plaintiff's termination, provides that:

> In the event the board of trustees receives a recommendation for non-renewal [of a teacher's term contract], the board, after consideration of the written evaluations required by Section 21.202 of this subchapter and the reasons for the recommendation shall, in its sole discretion, either reject the recommendation

> or shall give the teacher written notice of the proposed non-renewal.

In their Supplement, Defendants argue that Plaintiff is not protected by this provision because Section 21.204 does not apply to probationary employees. However, Plaintiff does not argue that this section directly applies to her. Instead, she argues that this provision clarifies any possible ambiguity in the Board's policy. The Court agrees with Plaintiff. Since the Board's policy applies not only to probationary employees such as Plaintiff, but also to non-probationary employees who are covered by Section 21.204, the Court will adopt an interpretation of the policy that complies with Section 21.204.

In her affidavit, Plaintiff does not specifically state that she relied on Section 21.204 to interpret the Board's policy, but she does allege that she consulted her attorney to assist her in interpreting the policy:

> I notified my attorney of the letter I had received from Defendant Tasma on October 19, 1996. After discussing the letter and the attached policy with him, I directed him to request a hearing with the Board of Trustees if,

cause the Board's policy led Plaintiff to believe that she had the right to request a hearing *after* the Board notified her that it proposed to adopt Tasma's recommendation that she be terminated and because no one notified Plaintiff that her only opportunity to defend herself in front of the Board would instead be at its meeting of November 13, 1994, when the Board first considered that recommendation, the Court concludes that Plaintiff was denied due process.

■ In *Ferguson v. Thomas*, 430 F.2d 852, 856 (5th Cir.1970), the Fifth Circuit declared that "[w]hen published rules and regulations establish a particular statutory procedure for the termination of a teacher's employment, they may add to the constitutional minimum." The Fifth Circuit further explained the meaning of *Ferguson* in *Levitt v. University of Texas at El Paso:*

> The additions to the "constitutional minimum" we referred to in *Ferguson* arise only when the procedures promised are denied in such a manner that the constitutional minimum is itself denied or an independent constitutional deprivation is effected. For example, if a university promised its faculty that it would provide professors two opportunities to challenge decisions to terminate their employment and a professor who relied on that promise forwent the first opportunity to raise his challenge, the university could not deprive him of the second opportunity without violating due process. This would be the case even though the due process clause itself guarantees the professor only one hearing.

759 F.2d at 1230 (citing *Villegas v. U.S. INS*, 745 F.2d 950, 951 (5th Cir.1984); *Raley v. Ohio*, 360 U.S. 423, 437–38, 79 S.Ct. 1257, 1265–67, 3 L.Ed.2d 1344 (1959); *Cox v. Louisiana*, 379 U.S. 559, 569–71, 85 S.Ct. 476, 483–84, 13 L.Ed.2d 487(1965)). This situation describes exactly what happened to

after Defendant Tasma made his recommendation to the board, I received written notification of the proposed action of the Board to dismiss me for good cause before the completion of the term fixed in the contract.
Affidavit of Bonny Rogan [Doc. # 19], ¶ 14.

**14.** Although Plaintiff's failure to exhaust her administrative remedies does not bar her constitu-

Plaintiff. The Court thus concludes that the Board's decision to dismiss Plaintiff without giving her notice of its proposed decision, and without then allowing her the opportunity to request a hearing, violated Plaintiff's constitutional right to due process.

■ *Remedy.*—On account of Defendants' denial of her right to due process, Plaintiff seeks reinstatement, back pay, compensatory damages for her emotional distress, punitive damages, attorneys' fees, and costs. The Court agrees that Plaintiff is entitled to a trial to determine compensatory emotional distress damages and punitive damages. *See Wells v. Dallas Indep. School Dist.*, 793 F.2d 679 (5th Cir.1986) (ordering new trial to determine proper damages for school superintendent whose procedural due process rights were violated when his school district summarily dismissed him).[14] However, just because RISD did not follow constitutional procedures in terminating Plaintiff does not mean that she should not in fact have been terminated or is therefore entitled to reinstatement and back pay. Instead, in order to determine whether she should have been terminated, the Board must now reconsider Tasma's recommendation while affording Plaintiff adequate notice and opportunity to defend herself in front of the Board. In *Ferguson*, the Fifth Circuit explained that, in this situation, a court should not itself consider whether an employee should have been terminated:

> Federal Court hearings in cases [involving school terminations] should be limited in the first instance to the question of whether or not federal rights have been violated in the procedures followed by the academic agency in processing the plaintiff's grievance. If a procedural deficit appears, the matter should, at that point, be remanded to the institution for its compliance with

tional due process claim, *see supra* at ——, this failure may be used as evidence at trial of Plaintiff's failure to mitigate her damages. Had Plaintiff pursued an appeal with the Texas Education Agency, she might have been able to mitigate some or all of her emotional distress damages that may flow from the due process deprivation.

minimum federal or supplementary academically created standards.

430 F.2d at 858.

If, after providing Plaintiff with a hearing,[15] the Board determines that Plaintiff should not have been terminated, then it appears that Plaintiff would have the right to back pay in the amount that she would have received had she not been terminated from her one year contract.[16] However, this issue is not presently before this Court, and it is not even necessary for the Court to determine whether Plaintiff could appeal to a court if she disagrees with the Board's determination of what remedy to offer her, in the event that the Board determines that she should not have been terminated. It appears, however, that if Plaintiff were not satisfied with the proposed remedy, she would need to appeal that decision to the Texas Education Agency, as described *supra* Section III.B. 1.

### b. *Texas Constitution, Article I, Section 27*

 Although Plaintiff has not aggressively pursued this claim, her complaint alleges a violation of Article 1, Section 27 of

the Texas Constitution. This Section provides that:

> The citizens shall have the right, in a peaceable manner, to assemble together for their common good; and apply to those invested with the powers of government for redress of grievances or other purposes, by petition, address or remonstrance.

Although it is not clear from the summary judgment record, it appears that Plaintiff's claim under this Section is that the individual defendants did not respond to her grievances against Lewis and that the Board, representing RISD, did not provide her with an opportunity to present those grievances in response to Lewis and Tasma's allegations. If Plaintiff is correct that her right under Article 1, Section 27 of the Texas Constitution was violated, then that violation will be cured by the Court's order that the Board provide her with an opportunity to defend herself against Lewis and Tasma's allegations.[17]

### IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants' Motion to Dismiss and/or for Summary Judgment [Doc.

---

**15.** Before her hearing, Plaintiff must be informed of any witnesses or evidence, about which she has not already been notified, that will be used against her. In addition, upon Plaintiff's request, the Board must ensure that the following minimum due process requirements, established in *Ferguson v. Thomas*, 430 F.2d at 856, are met:

(a) [Plaintiff must] be advised of the cause or causes for [her] termination in sufficient detail to fairly enable [her] to show any error that may exist,

(b) [Plaintiff must] be advised of the names and the nature of the testimony of witnesses against [her],

(c) at a reasonable time after such advice [she] must be accorded a meaningful opportunity to be heard in [her] own defense,

(d) that hearing should be before a tribunal that both possesses some academic expertise and has an apparent impartiality toward the charges.

**16.** Because Plaintiff's contract was for a one year term, she only had a property interest in her continued employment with RISD for that year. Therefore, it does not appear that the Board would have any legal obligation to reinstate her or give her back pay for the period after her contract would have expired.

**17.** Because Plaintiff will now have the opportunity to present her grievances to the Board, it is not necessary for the Court to determine whether the individual defendants violated Plaintiff's Article 1, Section 27 right. *See Office of Public Ins. Counsel v. Texas Automobile Ins. Plan*, 860 S.W.2d 231, 236 (Tex.App.—Austin 1993, writ denied) (Article 1, Section 27 of the Texas Constitution guarantees citizens right to present their grievances to those invested with authority, not necessarily to whomever the plaintiffs wish to present their grievances).

In any case, the individual defendants may be shielded from this state constitutional claim under the doctrine of quasi-judicial immunity. (The Texas professional immunity statute, Tex. Educ.Code Ann. § 21.9213(b), discussed *supra* Section III.A. 1., does not apply to constitutional claims. *See Moore*, 751 F.Supp. at 672–73.) This doctrine of quasi-judicial immunity protects public officials when they "(1) act within the course and scope of their office, (2) perform discretionary functions, and (3) act in good faith." *Alcorn*, 877 S.W.2d at 405. Quasi-judicial immunity applies to employment decisions made by public school officials. *See Jones v. Houston Independent School District*, 805 F.Supp. 476, 479 (S.D.Tex.1991), *aff'd*, 979 F.2d 1004 (5th Cir.1992).

# 20] is **GRANTED IN PART** in accordance with this Memorandum Opinion and Order. All of Plaintiff's claims, except for her due process claim against Defendant RISD, are dismissed. It is further

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment [Doc. # 17] is **GRANTED**. It is further

**ORDERED** that Defendant Royal Independent School District must provide Plaintiff with the opportunity to defend herself at a hearing at which the District Board of Trustees will reconsider her termination, in accordance with this Memorandum Opinion and Order.